LOVELL KIMBALL *et al.*, plaintiffs in error, v. AMASA G. Cook, defendant in error.

*Error to Kendall.*

Objections to depositions must be made before the trial, otherwise they will be considered as waived.

Proceedings under the Act of 1839 to enforce a mechanic's lien are in the nature of a proceeding in Chancery, and they are to be governed by the rules and practice of that Court. The same rules of evidence are applicable, with a single exception, the admissibility of parol proof, for which the Act expressly provides. The answer of the defendant in such proceedings, therefore, so far as it is responsive to the bill or petition, is admissible in evidence.

By the word "creditors," in the eleventh section of the Act of 1839, relating to mechanics' lien, is meant, such as claim a lien under the provisions of the Act.

BILL to enforce a Mechanic's Lien, originally filed in the La Salle Circuit Court, by the defendant in error against the plaintiffs in error. The venue was changed to Kendall county, where the cause was heard before the Hon. John D. Caton and a jury, at the April term 1844, when a verdict was rendered in favor of the complainant below for $2400, on which a judgment was entered accordingly. The material facts appear in the Opinion of the Court.

*J. Butterfield,* and *J. V. A. Hoes,* for the plaintiffs in error.

*A. Lincoln, O. Peters,* and *T. L. Dickey,* for the defendant in error.

The Opinion of the Court was delivered by

CATON, J.*   Cook filed his bill in the La Salle Circuit Court, under the Act of 1839, for the purpose of enforcing a mechanic's lien. The bill sets forth the contract made between Cook and Kimball, dated 3d June, 1838, by which Cook was to do the millwright work of a flouring mill, in a particular manner on a specified lot in the town of Marseilles,

---

* WILSON, C. J. and LOCKWOOD, J. did not hear the argument in this cause, and gave no opinion.

for which he was to receive four thousand, eight hundred dol-, lars, the one half as the work progressed. It then avers that he had done the work according to the contract, except put-, ting in a corn cracker, which Kimball had not furnished. That he has received two thousand, four hundred dollars in part payment, and that the same amount still remains due and unpaid. The answer denies that the work had been done in pursuance of the contract, specifying several particulars, and denied that any thing was due. A replication was filed by Cook, and the venue changed to the county of Kendall, where the case was tried by a jury, who found a verdict for the complainant for $2400, the full amount claimed by him, on which a judgment was rendered.

Exceptions were taken to several decisions of the Court during the trial, and to an instruction to the jury, which are assigned for error. We will consider such as we deem important.

On the trial, the complainant offered to read the deposition of one Miller, which had been regularly taken, and the defendants objected to the reading of the answers to the sixteenth and seventeenth interrogatories, which was overruled by the Court and the entire deposition read to the jury. These interrogatories inquire whether the contract had been complied with by Cook, in the amount and quantity of the work, and the time of completion. After stating some defects in the work, the witness said, "Mr. Skinner and myself went into a packing room, and examined the contract by ourselves, after having privately examined the work; we came to the conclusion that the contract, according to our judgment, was fulfilled on the part of Cook, with the above exceptions." Even admitting that this part of the deposition was objectionable on account of its generality, and also of its involving a construction of the contract within itself, yet it was too late to make such an objection on the trial. All objections which might be obviated by a re-examination of the witness must be considered as waived, if not taken before the trial. This part of this deposition, especially when taken in connection with the balance of it, had a legitimate ten-

dency to prove the complainant's case, and the party cannot be allowed to lull his adversary into security by his silence, till the trial commences, and then spring an objection on him which, if sustained, may deprive him of the proof of material facts, which he might have established in a more formal or regular mode, had the objection been made and sustained at an earlier period.

It is assigned for error, that the Court instructed the jury, "that if they believe, from the evidence, that the defendant, Kimball, or any person under him, took possession of the mill, and used the same, that the plaintiff is entitled to recover the value of the work performed by him on said mill, although the same was not fully completed according to the contract; that the jury, in such case, should find for the plaintiff for the work so performed, according to the contract price, deducting therefrom such damages as the defendant, Kimball, may have sustained by reason of the non-performance of the residue of the work agreed by the contract to be performed, and also deducting the payments made on the said contracts."

Under this form of action, we are of opinion that this instruction was not correct. The suit was instituted on a special contract, and the bill averred a performance on the part of the complainant, except in one particular, when he was prevented from performing by the defendant. To have sustained his case, he must have proved it substantially as alleged. He could not abandon it, and go as for a *quantum meruit.* This instruction was given upon the hypothesis, that the jury should find that the plaintiff had not complied with his part of the contract. But the jury found that he had completed his part of the agreement, and consequently the contingency did not occur in the deliberations of the jury, when it would have become necessary to apply the principle laid down in the instruction. We know that they must have found that the contract was complied with on the part of Cook, from the fact that they assessed the complainant's damages at $2400, which was the full amount claimed by him as unpaid on the entire contract. For this error we should not reverse the judgment.

The next and by far the most important question is, whether

the Court decided properly in denying the application of Kimball, to read as evidence to the jury that portion of his answer which is responsive to the bill. In order to determine this, it is necessary to ascertain whether this is a proceeding at Law, or in Chancery. It is not so much by what the proceeding may be called, as the powers with which the Court is clothed, the mode by which the Court is to proceed, the interests to be affected, and the end to be attained, to which we must look to determine the true nature and character of this proceeding. It is true that this Court, in the case of *Turney* v. *Saunders*, 4 Scam. 533, said that the law of 1839 has made this a Chancery proceeding, but as that was not the direct question before the Court, and as that remark was incidentally made in attempting to illustrate another question, we do not consider ourselves bound by it as authority. Hence we shall proceed to examine this question as a new one before this Court.

The first and second sections of the Act to create the lien, specify its extent and the nature of the contracts under which it may exist. The third section provides, that the creditor shall proceed by bill or petition, and declares that "the filing of the bill or petition in the clerk's office, and sueing out a summons thereon, shall be deemed the commencement of the suit." The fourth section provides that the bill or petition shall contain a statement of the contract, a description of the premises sought to be subjected to the lien, and all other facts and circumstances necessary to a full understanding of the rights of the parties, and shall be considered the foundation of the action, "and upon filing which with the clerk, a summons shall issue thereon against all persons made parties as is required upon filing bills in Chancery." The cause of action is stated by bill, which is to contain the same matter as a bill in Chancery, and like suits in Chancery, the bill must be filed before the process goes out, and this process also must be the same as in Chancery, which, of course, must be served by the sheriff by copy as a summons out of Chancery. Thus far every thing is entirely inconsistent with a suit at Law, but is perfectly identical, in every respect, with a proceeding in Equity.

But the provisions of the law in relation to the parties to the suit are still more distinctive, if possible. The tenth section says,—"In proceedings under this Act, all persons interested in the subject matter of the suit, or in the premises intended to be sold, may, on application to the Court wherein the suit is pending, become parties at any time before final judgment." And the fifteenth section provides, that persons having liens on the premises, and whose claims are not due at the time of the commencement of the suit may become parties, and the twenty third section declares, that "parties in interest, within the meaning of this Act, shall include all persons who may have any legal or equitable claim to land or lots upon which a lien may be attempted to be enforced under the provisions of this Act." By this it will be seen that all persons whose interests, either legal or equitable, direct or remote, may, by any possibility, be affected by the proceeding, may become parties, and they not only have the right to become parties, but from the unlimited power which the Court has, to settle and finally determine all their rights and interests, of whatever name or character they may be, so far as they may be affected by the lien, they are necessary parties, as much as in any Chancery suit whatever. The manner of making them parties, too, is the same as in ordinary Chancery suits, for, by the fifth section, it is provided,—"For the purpose of bringing all parties in interest before the Court, the Court shall have power to permit amendments to any part of the pleadings, and to issue process, make all orders requiring parties to appear, and requiring notice to be given by publication in newspapers, that are or may be authorized in proceedings in Chancery." We see the same mode prescribed for making new parties, adopted by Courts of Chancery, and should it be made to appear to the Court at any time, that other persons are interested, the Court would compel the complainant to make the necessary parties by amending his bill, and taking the usual and necessary steps to bring in such new parties. As to the parties, then, the proceeding is, in all its features, a Chancery proceeding and totally inconsistent with a suit at law.

We will now examine further the practice prescribed, and powers expressly conferred by the Act, to arrive at the relief to be afforded.

And first, of making up the issues. By the seventh section of the Act, it is provided that the defendants shall answer the bill under oath, "and the plaintiff shall except or reply to the answer as though the proceeding was in Chancery. The answer shall be regarded, as the plea of the defendant, and by a replication thereto an issue or issues shall be formed, which shall be tried by the Court, or by a jury under the direction of the Court, as the Court may direct, or the parties agree. The eighth section provides, that the defendants shall answer the bill on or before the day on which the cause is set for trial, and the issue or issues in the cause shall be made up under the direction of the Court, and oral testimony shall be received as in cases at law. The nineteenth section provides, that different creditors, claiming the benefit of the lien, may contest each others' rights, "and upon all questions made by parties, the Court shall require issues at law or fact to be formed so as to bring about a speedy decision thereof."

These are all of the specific provisions in relation to making up the issues, which are ordinarily to be made up by the bill, answers and replication alone; but in extraordinary cases, issues, as in the Court of Chancery, are to be made up under the direction and discretion of the Court, and to attain all the ends of justice, more comprehensive powers could not be useful, or desired. They are identically the same with those known to the Courts of Chancery, and those alone. As in Chancery cases, no rejoinder can be filed, the replication must of course be general, and hence, if the answer sets up new matter which requires to be admitted and avoided, or otherwise specially replied to, no doubt can be entertained but it must be done by amending the bill, and inserting the new matter in the charging part of the bill, and then explaining it as in ordinary cases in Chancery. Thus, should a defendant come in and set up an incumbrance by judgment or mortgage, as, by the twenty second section, the complainant would have a right to contest its validity by showing fraud,

payment or the like, the only appropriate mode in which the complainant could present that matter would be by amending his bill as above suggested. But as there may be so many defendants who may have such a variety of complicated, jarring and hostile interests, whose rights, as we shall presently see, may be tried at different times, the eighth and nineteenth sections, as if to leave no power wanting, which is possessed by Equity tribunals, provides for making up such special issues under the direction of the Court as may be deemed necessary. As it was not necessary to attain the end sought, to authorize any new mode, or invent any new plan for constructing issues unknown both to Courts of Law and Equity, these sections must only be understood as adopting, in this proceeding, what was before familiar to Courts of Equity, as making up feigned issues, orders of reference to a Master to inquire and report as to particular matters and the like.

We will next examine as to the form of trial to be pursued in this case. It is insisted that, in the seventh section, there is a departure from the known course of Chancery proceeding. It says,—"An issue, or issues shall be formed, which shall be tried by the Court, or by a jury under the direction of the Court, as the Court may direct or the parties agree." So far from this being a departure from the mode of proceeding in Chancery, it is a strict and literal description of it. The same discretion is here given to the Court, which is possessed by those Courts. Should the parties agree to have a trial by the jury, and the Court should make no special order in the case, a jury would be called, or should the Court think proper to call to its aid a jury, it could do so, notwithstanding both parties should object. Otherwise, the trial would be before the Chancellor as in ordinary cases. In this, as in all of its other features thus far, we find the course of Chancery Courts provided.

The eighth section provides, that "oral testimony shall be received as in cases at law." Here is the first, and indeed the only substantial departure to be found in this Act, from the usual and appropriate Chancery practice. And yet this

departure can hardly be said to be a substantial departure, at least not a very important one, for either party may, if he choose, pursue the usual mode of taking depositions, so as he should not delay the other party thereby, for this provision is introduced for the purpose alone of expediting the proceeding. And can it with propriety be said, that because the legislature has seen fit to authorize the parties to introduce oral testimony on the trial, if they choose, for that reason alone it shall be held not to be a Chancery proceeding, notwithstanding in every other respect it is clearly so? In proceedings for divorce the same rule obtains, and the statute provides that the issue "shall be tried by a jury," and yet I can hardly think that any one would deny that that is a Chancery proceeding, in every respect. The legislature might adopt that rule in all cases in Chancery, and still they would undoubtedly belong to that branch of jurisprudence.

There is a provision in the sixteenth section, which is alone compatible with a Chancery proceeding, which I will here notice, and that is, when there are several creditors, their issues may be tried separately, and the want of preparation in one, shall not delay the other, although the Court may, if it thinks proper, delay ordering a sale on one claim till all the issues are tried.

A variety of questions of fact may arise where no direct issues are formed by the pleadings, and especially under the twentieth section. It secures to the lien of the mechanic a priority over previous incumbrancers upon the buildings erected, and materials furnished, "and upon questions arising between previous incumbrancers and creditors, under the provisions of this Act, the previous incumbrancer shall be preferred to the extent of the value of the land at the time of making the contract. And the Court shall ascertain by jury or otherwise, as the case may require, what proportion of any sale shall be paid to the several parties in interest." All the controversies contemplated by this section must arise between creditors and incumbrancers alone, and in case of several lien creditors, and several previous incumbrancers, the provision of the sections propose, that the various questions of fact to

be ascertained, may be altogether too complex to admit of a jury trial, for it says, "the Court shall ascertain by a jury, *or otherwise, as the case may require,* what proportion of the proceeds of any sale shall be paid to the several parties in interest." Whenever, in the opinion of the Court, the circumstances of the case should require it, it would be its duty to resort to the usual modes known to Chancery Courts, to ascertain the necessary facts to enable it to make a proper final order.

We will now inquire more particularly into the nature of the relief which may be granted by the Court. This, we shall see, is as broad and universal as the varied and complicated rights of the various parties may require, and is as complete and as comprehensive as that which is ever granted by the Courts of Chancery. Several portions of the statute bearing more or less upon the relief to be granted have already been stated, and hence it will only be necessary to refer to such other portions of the Act as bear on that branch of the inquiry.

By the eleventh section, it is declared, that "upon questions arising between different creditors, no preferences shall be given to him whose contract was first made." By "creditors" here, is meant, such as claim a lien under the provisions of this Act. The twelfth section provides, that the Court shall ascertain the amount due each creditor, and shall direct the application of the proceeds of sales to be made to each in proportion to their several amounts. The fifteenth section provides, that creditors whose claims are not due, may have the amount ascertained, which shall be allowed them, deducting interest to be computed to the time when they would become due. The fourteenth and sixteenth sections provide for the order of sale. The eighteenth section provides for making the representatives of deceased persons "parties, as though it was a suit in Chancery." As before stated, the twentieth section secures to the lien of the mechanic a priority over previous incumbrancers, upon the buildings erected and materials furnished. The twenty second section says: "Creditors, who file bills or petitions under this

Act, may contest the validity of the incumbrances, as well in regard to amount, as to their justice, and any incumbrance, whether by mortgage, judgment, or otherwise, charged and shown to be fraudulent in respect to such creditor, or in respect to creditors generally, may be set aside by the Court, and the premises made subject to the lien discharged from such fraudulent incumbrance." It may well be asked, what greater powers for granting the most full and complete relief, which any case may call for, is possessed by a Court of Chancery? It is as broad as any exigency can possibly require,—as comprehensive as justice, under any circumstances can ever demand.

When we look, then, to the parties to the suit, the mode of proceeding expressly pointed out in the Act, and the relief to be administered, we find in all its features strictly a Chancery proceeding, and nothing else. And an explicit declaration in the Act that it should be such, could not have made it more so.

But as if to remove all doubts, if any could exist, after these ample provisions, as to the nature of this proceeding, the twenty third section says, "In proceedings under this Act, the Courts are vested with all the powers of Courts of Chancery, and shall be governed by the rules of proceeding and decision in these Courts, so far as may be necessary to carry into full and complete effect the provisions hereof,·and so far as 'those rules of proceeding and decision are applicable to cases and questions presented for adjudication and decision."

But the nature of the right created and remedy afforded, would seem to render it a proper subject for Chancery jurisdiction. The Act creates a latent, secret lien, which may be enforced as against all the world, if the suit is commenced within six months after the demand falls due, while as to the proprietor, for whom the building is erected, there is no limitation. It is unknown to the world like a vendor's lien, or a resulting trust, and as appropriately could the Courts of Law enforce them, as to carry out the object contemplated by this Act.

I have examined this statute more extensively than I should

have done, had I not understood that the same construction has been uniformly given to it in the Circuit Courts, whenever the question has been presented, that was given in this case; but the more attentively I have examined this Act, and considered it, the more am I convinced that it is purely, in all its features, a Chancery proceeding, to be governed by the rules and practice of these Courts.

If the conclusion be correct, it would seem to be conclusive that the rules of evidence should be adopted, which exist in favor of Courts of Chancery, instead of those which obtain in Courts of Law, except in the admissibility of parol proof, which is expressly provided for by the Act. We must, of course, adopt the rules of one Court or the other, else suitors will never know on what they are to depend,—else the rules of evidence will be ever fluctuating and uncertain, until every imaginary question has been settled in this Court. If the nature of the proceeding is to have any influence, I think not a doubt can be left as to which is the proper rule. But even if it were doubtful as to which side of the Court this proceeding properly belongs, the slightest reflection must convince us not only of the propriety, but of the absolute necessity of adopting the rules of evidence known to the Courts of Equity. By the rules of the Courts of Law, no party to the record can be a witness without the consent of all the other parties, while, in Courts of Chancery, it is no objection, that he is a party to the record, but the only inquiry is, whether he is called to support his own interest. The same necessity which has created this rule in Courts of Equity, requires it to be adopted in this case. In the same suit, there may be, in effect, two or more different plaintiffs seeking to enforce distinct and separate liens, under contracts totally disconnected from each other. And there may be, also, a great variety of defendants, either mediately or immediately interested in the suit. Some of the parties may be interested in some issues and entirely indifferent as to others, on the trial of which they might be important,—nay, the only witnesses. Without adopting the rules of Equity in this respect, there might be a great delay, or a total denial of justice.

And now, when we see that this is strictly a Chancery proceeding,—when we see that the general rules of evidence adopted in Equity must prevail here,—when we see that the Act expressly declares that the Court "shall be governed by the rules of proceeding and decision in these Courts," so far as they are applicable, ought we, without any reason, to depart from those "rules of proceeding and decision," when called upon to decide, whether the answer of the defendant, which he is called upon by the plaintiff, and compelled by the law to swear to, is evidence in the cause, so far as it is responsive to the bill? What reason ever existed for making any answer in Chancery evidence, that does not apply here? He is called upon by the plaintiff to answer under oath as to specific matters, and as to those matters he necessarily makes him a witness. The defendant is not a volunteer, but he is forced in by the plaintiff, and compelled to testify against his wishes. When thus forced in, and "his conscience put upon the moral rack," shall we hold that he has only told the truth, when he has testified against himself? Compared with such a rule it would be a mercy, in the first instance, to presume every thing against him instead of calling for his oath, and then giving it no credence, but rather presuming that he has committed a perjury. I have no doubt but I decided wrong in the Court below, and that the answer of the defendant, so far as it was responsive to the bill, should have been read to the jury as evidence.

The judgment is reversed, and the cause remanded with directions for further proceedings not inconsistent with this Opinion.

Young, J. delivered the following dissenting opinion.

I dissent from the Opinion of the Court, for the reason that I am not prepared to admit, that the answer of a defendant in a suit to enforce a mechanic's lien, although sworn to, should be regarded as an answer to an ordinary bill in Chancery. If so, it may be used as evidence by the defendant at the trial, and could only be disproved by the evidence of two witnesses, or one witness and strong corroborating circumstances, tantamount to the evidence of another. It does not

appear to me that any such effect was intended by the statute to be given to such an answer. This is a proceeding *sui generis,* and the statute should, in my judgment, receive a liberal construction in favor of mechanics. I regard such an answer, although in writing and sworn to, as importing no more verity than the answer of a garnishee to an interrogatory in proceeding by *attachment,* or the evidence of such a defendant, if he had been required by the law to testify orally in open Court; and, in either case, it is my opinion, that the testimony of a single witness, or such circumstantial proof as would be satisfactory to the jury, should be allowed to preponderate against such answer, or evidence of the defendant.

*Judgment reversed.*